NORTHCUTT, Judge.
Dorothy Evans suffered injuries while in the care of a nursing home, Consulate Health Care of Sarasota, whose license holder is Sarasota Facility Operations, LLC. Evans’s grandson, John Manning, who holds her power of attorney, sued the nursing home entities for negligence. They moved to compel arbitration under an agreement Manning signed on Evans’s behalf. The circuit court denied their motion and they filed this nonfinal appeal challenging that decision. See Fla. R. App. P. 9.130(a)(3)(C)(iv). We reverse.
The pertinent facts of this case are essentially undisputed. We review de novo the circuit court’s application of the law to those facts. New Port Richey Med. Investors, LLC v. Stern ex rel. Petscher, 14 So.3d 1084, 1086 (Fla. 2d DCA 2009). As was the case in Stem, the only issue raised in this appeal is the enforceability of the arbitration agreement. See id. at 1087.
The agreement provided that it was governed by the Federal Arbitration Act and that the damages to be awarded in the arbitration were to be determined in accordance with Florida law applicable to a comparable civil action. The instant dispute stemmed from two provisions stating (1) that the National Arbitration Forum (NAF) was designated as the arbitrator and the arbitration was to be conducted by a panel of three arbitrators selected from the NAF Code panel; and (2) that the arbitration was to be conducted in accordance with the Code of Regulations of the NAF. However, under a consent judgment entered in Minnesota, the NAF was barred from arbitrating consumer disputes.[1] Therefore, the parties in this case could not abide by the provision of the agreement addressing the arbitration forum and the pool from which the arbitrators were to be drawn.
In the circuit court and here, Manning argued that because the NAF was unavailable to arbitrate, the supreme court’s decision in Shotts v. OP Winter Haven, 86 So.3d 456 (Fla.2011), required the nullification of the entire arbitration agreement. *714 He contended that the circuit court was without authority to appoint replacement arbitrators and that it must invalidate the entire agreement because the NAF rules were unavailable. The circuit court agreed with this position. We do not.
Both the federal and the Florida arbitration acts contain provisions addressing what a court should do when the agreed-upon arbitrators are unavailable:
If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.
9 U.S.C. § 5 (2012).
If an agreement or provision for arbitration subject to this law provides a method for the appointment of arbitrators or an umpire, this method shall be followed. In the absence thereof, or if the agreed method fails or for any reason cannot be followed, or if an arbitrator or umpire who has been appointed fails to act and his or her successor has not been duly appointed, the court, on application of a party to such agreement or provision shall appoint one or more arbitrators or an umpire. An arbitrator or umpire so appointed shall have like powers as if named or provided for in the agreement or provision.
§ 682.04, Fla. Stat. (2012).
In Stem, this court reversed the circuit court’s finding that the unavailability of the named arbitrators rendered an arbitration agreement unenforceable. Stern, 14 So.3d at 1087. The American Arbitration Association, the named arbitrator in the Stem agreement, had ceased to accept cases like the one presented. Relying on section 682.04, we held that the arbitration agreement was not invalid merely because the named forum was unavailable to conduct the arbitration. Instead, we noted, the circuit court must appoint other arbitrators. Id. at 1087. The Stem reasoning applies equally where, as here, the arbitration agreement provides that it is governed by the Federal Arbitration Act.
Manning contends that this court likely would have come to a different result if Stem had been decided after Shotts. Not so, as evidenced by our recent reliance on Stern in a post-Shotts decision, Spring Lake NC, LLC v. Figueroa, 104 So.3d 1211 (Fla. 2d DCA 2012) (stating that both the federal and the Florida arbitration acts authorize the circuit court to appoint new arbitrators when none are named). Shotts simply is not pertinent to the issue discussed in Stem.
The issue in Shotts was not the unavailability of an arbitration forum or of the forum’s arbitrators. The question posed there was whether the rules of a particular arbitration forum, the American Health Lawyers Association (AHLA)[2], were void as against public policy because they limited the remedies available to a litigant. The supreme court approved the analysis in Blankfeld v. Richmond Health Care, *715 Inc., 902 So.2d 296 (Fla. 4th DCA 2005), a case that, like Shotts and like this case, involved a nursing home arbitration. Blankfeld, determined that section 606 of the NHLA rules[3] was contrary to public policy because it limited the statutory remedies available in the Nursing Home Resident’s Act, § 400.023(2), Fla. Stat. (2001). Blankfeld, 902 So.2d at 298.
The Shotts court agreed with the Blank-feld analysis and held that the AHLA rules violated Florida’s public policy. Shotts, 86 So.3d at 474-75. The court then turned to the question of whether the provision requiring arbitration under the AHLA rules could be severed from Shotts’s arbitration contract. Again, it adopted the reasoning of a Fourth District case, Place at Vero Beach, Inc. v. Hanson, 953 So.2d 773 (Fla. 4th DCA 2007), and concluded that the provision was not severable, even though the agreement contained a severability clause, because the AHLA rules went to the essence of the agreement. “If the provision were to be severed, the trial court would be forced to rewrite the agreement and to add an entirely new set of procedural rules and burdens and standards, a job that the trial court is not tasked to do.” Shotts, 86 So.3d at 478. Moreover, the court wrote, if the provision were severed, a court would be hard pressed to determine whether the rest of the contract was supported by valid legal promises. For these reasons, Shotts held that the offending provision was not sever-able, and it invalidated the entire arbitration agreement. Id. at 480-81.
Our case differs from Shotts in that Manning has never argued that the NAF rules violate public policy. As far as we can ascertain from the limited appendices in this appeal, the rules were never presented to the court, and the court never had an opportunity to determine whether they violate public policy. Without such a determination, the circuit court’s ruling that Shotts mandated invalidating the entire agreement was error.
The nursing home defendants’ brief represents that the NAF rules are available. If that is the case, and if they contain language limiting Manning’s remedies, they might render the entire arbitration agreement unenforceable under Shotts.[4] But if the rules are merely unavailable, that situation in itself does not mean that the agreement must be voided. See Premier Real Estate Holdings, LLC v. Butch, 24 So.3d 708, 710 (Fla. 4th DCA 2009) (citing Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217, 1222 (11th Cir.2000) for the proposition that, under the Federal Arbitration Act, the fact that the NAF had dissolved did not destroy an arbitration provision in a contract). Butch held that a failure to designate the rules governing the arbitration did not invalidate an arbitration clause when the law governing the arbitration was set out in the agreement. Id. at 710-11. Here, the arbitration contract provides that it is governed by the Federal Arbitration Act and that damages shall be determined by the Florida law applicable to a comparable civil action.
*716 We reverse the circuit court’s order denying the motion to compel arbitration and we remand for further proceedings.
KELLY and LaROSE, JJ., Concur.

. Brown v. ITT Consumer Financial Corp., 211 F.3d 1217, 1222 (11th Cir.2000), suggests that the NAF has been dissolved.

. The AHLA was formerly known as the National Health Lawyers Association (NHLA).

. Section 606 states:
[T]he arbitrator may not award consequential, exemplary, incidental, punitive or special damages against a party unless the arbitrator determines, based on the record, that there is clear and convincing evidence that the party against whom such damages are awarded is guilty of conduct evincing an intentional or reckless disregard for the rights of another party or fraud, actual, or presumed.
See Blankfeld, 902 So.2d at 298.

. That result is highly unlikely, however, because the agreement itself provides that “the damages are to be determined in accordance with Florida law applicable to a comparable civil action."